1
2
3
4
5
6
7
8                   UNITED STATES DISTRICT COURT

9                FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MIGUEL SANCHEZ,                        Case No.  1:21-cv-00907-ADA-BAM

12                  Plaintiff,
                                            **FINDINGS AND RECOMMENDATIONS**
13          v.                              **REGARDING PLAINTIFF'S SOCIAL**
                                            **SECURITY COMPLAINT**
14   KILOKO KIJAKAZI, Acting Commissioner
     of Social Security,[1]                 (Docs. 22, 24)
15
16                  Defendant.              FOURTEEN-DAY DEADLINE

17

18                              **INTRODUCTION**

19          Plaintiff Miguel Sanchez ("Plaintiff") seeks judicial review of a final decision of the

20   Commissioner of Social Security ("Commissioner") denying his applications for disability insurance

21   benefits under Title II of the Social Security Act and for supplemental security income under Title

22   XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which

23   were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe, for issuance of

24   findings and recommendations.

25

26   _____

27   [1]  Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d)
     of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this
28   suit.

                                            1

1   Having considered the briefing and record in this matter, the Court finds that the decision of

2   the Administrative Law Judge ("ALJ") is supported by substantial evidence in the record as a whole

3   and based upon proper legal standards.  Accordingly, this Court will recommend denying Plaintiff's

4   appeal and affirming the agency's determination to deny benefits.

5                          **FACTS AND PRIOR PROCEEDINGS**

6   Plaintiff protectively filed an application for disability insurance benefits and for supplemental

7   security income on January 22, 2019.  AR 15, 226-32, 236-37.[2]  Plaintiff alleged that he became

8   disabled on January 1, 2015, due to ammonia in the liver, high blood pressure, and diabetes.  AR 15,

9   236.  Plaintiff's applications were denied initially and on reconsideration.  AR 136-40, 147-52.

10  Subsequently, Plaintiff requested a hearing before an ALJ.  Following a hearing, ALJ Matthew

11  Kawalek issued an unfavorable decision on November 25, 2020.  AR 12-33, 39-75.  Thereafter,

12  Plaintiff sought review of the decision, which the Appeals Counsel denied, making the ALJ's decision

13  the Commissioner's final decision.  AR 1-5.  This appeal followed.

14  **Hearing Testimony**

15  On August 31, 2020, ALJ Kawalek held a telephonic hearing.  Plaintiff appeared with his

16  attorney, Jonathan Pena.  Cassie Mills, an impartial vocational expert, also appeared by telephone.  AR

17  42-43.

18  In response to questions from his attorney, Plaintiff testified that his condition has kept him

19  from doing a full-time job.  The ammonia in his liver affects his brain and he cannot comprehend or

20  function correctly.  He also has to go to the restroom seven or eight times in an eight-hour day because

21  of his medications.  On average, he spends 25 minutes in the restroom every time.  He only takes

22  medication for this condition.  AR 54-56.

23  Plaintiff also testified that he had surgery to remove cancer in his left kidney about a month

24  and two weeks prior to the hearing.  As to his liver issues, Plaintiff occasionally gets dizzy spells,

25  about three to four times a week.  The spells will last almost the whole day.  It is hard to walk when

26

27  _____

28  [2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

dizzy, and he has falls.  He does not use an assistive device, like a cane or a walker.  AR 56-58.  He also has tiredness from the ammonia issue.  The fatigue usually affects him about twice a week.  He will lie down and try to nap.  AR 58-59.  With his diabetes, everything is good, and he does not have any swelling.  He takes medication for his cirrhosis of the liver.  The medications have dropped the ammonia.  Plaintiff also has frequent anxiety attacks, once or twice every two weeks.  AR 59-61.

Plaintiff further testified that he has difficulties with concentration.  He can concentrate on the TV for about 35 minutes.  Plaintiff also testified that he can stand for one to three hours.  He walks in the park every day for about an hour.  He does not have any problems with sitting for an extended period of time.  He can lift and carry about 50 pounds.  He has to lie down about twice a day for at least an hour each time.  AR 62-63.

When asked about a typical day, Plaintiff testified that with the medication, he hardly gets out of the house because he is constantly going to the restroom.  He is mainly inside the house until the medication wears off, and then he is able to go do things, like grocery shopping.  Plaintiff helps out around the house with chores, such as dishes and laundry.  AR 63-64.

Following Plaintiff's testimony, the ALJ elicited testimony from the VE.  The VE classified Plaintiff's past work as pipe fitter, pipe fitter supervisor, and equipment installer.  AR 68-69.  The ALJ also asked the VE hypothetical questions.  For the first hypothetical, the ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education, and work history.  This individual would be limited to occasionally lifting and carrying 50 pounds, frequently lifting and carrying 25 pounds, could stand and/or walk six hours of an eight-hour workday, sit six hours of an eight-hour workday, could never climb ladders, ropes, or scaffolds, could occasionally climb ramps and stairs, could frequently stoop, kneel, crouch, or crawl, and could tolerate no exposure to hazards, including unprotected heights or operating heavy machinery.  This individual also was limited to understanding, remembering, carrying out or maintaining concentration on no more than simple tasks and instructions--defined as those job duties that can be learned in up to 30-days, could sustain only ordinary routines, and could make no more than simple work-related decisions.  The VE testified that this individual could not perform any of Plaintiff's past jobs, but could perform other work in the national economy, such as dishwasher, janitor, and hand packager.  AR 69-70.

3

For the second hypothetical, the ALJ asked the VE to assume an individual of Plaintiff's age, education, and work history.  This individual could never lift any weight, could stand and/or walk for less than two hours of an eight-hour workday, must be able to use a cane for standing or walking, could sit about two hours of an eight-hour workday, would require a 20 to 30 minute break for every two hours of work, would need to be able to elevate the bilateral lower extremities at least 50% of the workday to chest level, could never twist, stoop, crouch, squat, or climb, could handle up to 5% of the workday, could finger 1% of the workday, could reach in front of the body 1% of the workday, but could never reach overhead with the bilateral upper extremities.  This individual would be off task 25% or more of the workday and would be expected to miss more than four days of work per month on average.  The VE testified that this individual could not perform any of Plaintiff's past work or any other work in the national economy.  AR 70.  The VE confirmed that she was drawing on her professional experience for the limitations regarding climbing, absenteeism, reaching or handling, fingering, off-task behavior, and elevating the lower extremities.  AR 71.

For the third hypothetical, Plaintiff's attorney asked the VE to add to hypothetical one that the individual would have to take restroom breaks every hour for 15 minutes on a daily basis.  The VE testified that this generally was not an accommodation that would be tolerated.  AR 71-72.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act.  AR 15-33.  Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2015, his alleged onset date.  AR 17-18.  The ALJ identified the following severe impairments:  chronic liver disease, including cirrhosis of the liver, alcoholic hepatitis, chronic hepatic failure, and portal hypertension; obstructive sleep apnea, obesity; and hepatic encephalopathy.  AR 18-19.  The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments.  AR 19-21.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a reduced range of medium work. Plaintiff could occasionally lift/carry 50 pounds and frequently lift/carry 25 pounds. He could stand and/or walk 6 hours and sit 6 hours of an 8-hour workday. He could never climb ladders, ropes, or scaffolds, could occasionally climb ramps and stairs, and could frequently stoop, kneel, crouch, or crawl. He could tolerate no exposure to hazards, including unprotected heights or operating heavy machinery. He was limited to understanding, remembering, carrying out, and maintaining attention and concentration on no more than simple tasks and instructions, defined specifically as those job duties that can be learned in up to 30 days. He could sustain only ordinary routines and make no more than simple, work-related decisions. AR 21-31. With this RFC, the ALJ found that Plaintiff was not capable of performing his past relevant work, but there were other jobs in the national economy that he could perform, such as dishwasher, janitor, and hand packager. AR 31-33. The ALJ therefore concluded that Plaintiff had not been under a disability since January 1, 2015, through the date of the decision. AR 33.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

# REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

# DISCUSSION[3]

Plaintiff asserts that the RFC is not supported by substantial evidence of record.  Plaintiff also asserts that the ALJ erred (1) in rejecting the treating providers' off-task limitations based on Plaintiff's need to use the restroom every hour; and (2) by failing to provide clear and convincing reasons for rejecting Plaintiff's symptom testimony regarding his need to use the restroom every hour.

## A.  RFC – Medical Opinion Evidence

Plaintiff argues that the RFC is not supported by substantial evidence.  In particular, Plaintiff faults the ALJ for failing to adopt any of the medical opinions in developing Plaintiff's RFC. However, under the applicable regulations, the ALJ was not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)."  20 C.F.R. §§ 404.1520c(a), 416.920c(a).  An RFC "is the most [one] can still do despite [his or her] limitations" and it is "based on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. §§ 404.1545(a)(1) ("We will assess your residual functional capacity based on all of the relevant medical in your case record."), 416.945(a)(1) (same).  Indeed, "[t]he RFC need not mirror a particular opinion; it is an assessment

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

1    formulated by the ALJ based on all relevant evidence." *Ashlock v. Kijakazi*, No. 1:21-CV-01687-
2    GSA, 2022 WL 2307594, at *3 (E.D. Cal. June 27, 2022).

3         Here, the state agency medical consultants, Dr. Nancy Childs and Dr. G. Dale, determined that
4    Plaintiff's physical impairments were non-severe.  AR 101, 109, 120, 130.  State agency medical
5    consultant Dr. K. Gregg, M.D., also determined that Plaintiff's mental impairments were non-severe.
6    AR 120, 131.  The ALJ found these opinions unpersuasive and inconsistent with the record.  AR 28-
7    29.  Plaintiff does not challenge this determination.

8         In addition to the state agency medical consultants, the ALJ considered the 2018 and 2019
9    opinions of Dr. Michael Komin, who opined that Plaintiff had several chronic conditions that left him
10   unable to work.  AR 29, 434, 452, 462-64.  The ALJ found Dr. Komin's opinions unpersuasive and
11   inconsistent with the record.  AR 29-30.  The ALJ also considered the opinions of Donya Walker,
12   FNP-C, who completed physical and mental RFC questionnaires in late 2019.  AR 30, 757-59, 760-63.
13   The ALJ found her opinions unpersuasive and inconsistent, particularly noting that there were no
14   treatment records from her in the record and that Plaintiff testified that she had seen him only twice.
15   AR 30-31.

16        Plaintiff does not appear to argue that the ALJ could not find these opinions unpersuasive, but
17   rather that because the ALJ did so, he improperly reviewed the raw objective evidence medical data
18   and developed the RFC based on his own lay opinion.  (Doc. 22 at pp. 13-14.)  This argument is not
19   compelling.  The determination of a claimant's RFC is wholly within the province of the ALJ. *See*
20   *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007). The RFC assessment is based on all the
21   evidence in the record, and it is the ALJ's duty to consider and weigh that evidence. *See id.*; *see also*
22   *Harrison v. Saul*, No. 1:19-CV-01683-BAM, 2021 WL 1173024, at *6 (E.D. Cal. Mar. 29, 2021).  In
23   this case, the ALJ considered the medical opinions of both Dr. Komin and FNP Walker, compared
24   them with the medical evidence of record, and rendered a decision on Plaintiff's RFC.

25        Plaintiff also claims that the ALJ "erred by failing to obtain an opinion from an examining
26   physician source."  (Doc. 22 at p. 14.)  In other words, Plaintiff argues that the ALJ erred by "failing
27   in his duty to develop the record and send [Plaintiff] to a CE to examine him and review his records or
28   have a Medical Expert (ME) review the evidence."  (*Id.* at p. 15.)  However, it is Plaintiff's burden to

1  establish disability.  *Terry* , 903 F.2d at 1275; 42 U.S.C. § 423(d)(5)(A). ("An individual shall not be

2  considered to be under a disability unless he furnishes such medical and other evidence of the

3  existence thereof as the Commissioner of Social Security may require."); 20 C.F.R. §§ 404.1512(a)

4  ("[Y]ou have to prove to us that you are ... disabled ...."); 416.912(a) (same); *Harrison*, 2021 WL

5  1173024, at *5.  Moreover, "[a]n ALJ's duty to develop the record further is triggered only when there

6  is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the

7  evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).  In this case, there is no

8  indication that the record was ambiguous or inadequate to allow for proper evaluation.  The record

9  included Plaintiff's treatment records, along with opinions from his medical providers.  In addition,

10 the ALJ left the record open after the hearing to obtain additional medical evidence from Plaintiff's

11 physician.  AR 43-47.  *See*, *e.g.*, *Hines v. Berryhill*, No. 16-CV-03078-JSC, 2017 WL 3251915, at *12

12 (N.D. Cal. July 31, 2017) (concluding ALJ can discharge duty to develop the record in several ways,

13 including by making a reasonable attempt to obtain medical evidence from the claimant's physician(s)

14 or keeping the record open for more supplementation).

15       Plaintiff also argues that the ALJ erred by failing to "submit the updated MRI record to an

16 'acceptable' medical professional for interpretation."  (Doc. 22 at p. 14; Doc. 25 at p. 4.)  However,

17 Plaintiff does not identify an MRI report that would require interpretation.  Although the medical

18 record includes various tests, such as an esophagogastroduodenoscopy, ultrasounds, and CT scans

19 (*see*, *e.g.*, AR 324, 332-33, 334-35, 569, 595-96, 597-98, 599, 604, 766), the Court has not identified

20 any "updated MRI" results, nor is one identified in the ALJ's decision.  The only MRI in the certified

21 medical record is a brain MRI from 2014, which is prior to Plaintiff's alleged onset date (AR 603).

22 Because the medical record does not appear to include an "updated MRI," Plaintiff's argument lacks

23 merit.

24       Based on the foregoing, the Court does not find that the ALJ committed reversible error in

25 developing Plaintiff's RFC.

26 ///

27 ///

28 ///

8

1

### B.  Medical Opinions – Medication Side Effects

2  Plaintiff argues that the ALJ failed to account for the limitations identified by his treating

3 providers caused by side effects of his medication resulting in excessive need for bathroom use.  (Doc.

4 22 at pp. 15-16.)

5  Because Plaintiff applied for benefits after March 27, 2017, his claim is governed by the

6 agency's new regulations concerning how an ALJ must evaluate medical opinions.   20 C.F.R. §§

7 404.1520c, 416.920c.  As noted above, under the new regulations, the Commissioner does "not defer

8 or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20

9 C.F.R. §§ 404.1520c(a), 416.920c(a).  The Commissioner evaluates the persuasiveness of the medical

10 opinions based on the following factors: (1) supportability; (2) consistency; (3) relationship with the

11 claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has

12 familiarity with the other evidence in the claim or an understanding of our disability program's

13 policies and evidentiary requirements."  20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

14 Supportability and consistency are the most important factors.  20 C.F.R. §§ 404.1520c(b)(2),

15 416.920c(b)(2).  Supportability means the extent to which a medical source supports the medical

16 opinion by explaining the "relevant ... objective medical evidence." 20 C.F.R. §§ 404.1520c(c)(1),

17 416.920c(c)(1); *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).  Consistency means the

18 extent to which a medical opinion or prior administrative finding is "consistent ... with the evidence

19 from other medical sources and nonmedical sources in the claim."  20 C.F.R. §§ 404.1520c(c)(2),

20 416.920c(c)(2); *Woods*, 32 F.4th at 792.

21  <u>Dr. Komin</u>

22  On February 15, 2018, Dr. Komin opined that Plaintiff had a chronic condition and "is to

23 remain on social security."  AR 462, 463.  On that same date, and again on May 7, 2018, Dr. Komin

24 opined that Plaintiff had several chronic conditions that left him unable to work.  Dr. Komin indicated

25 that "patient states he also takes laxatives daily causing exclusive [sic] amount of stool throughout the

26 day."  AR 434, 452. 464.  In August 2019, Dr. Komin completed a physician's report for Kern County

27 Department of Human Services indicating that the claimant was unemployable from November 16,

28 2018 to November 20, 2020, due to hepatic failure chronic.  AR 735.  In April 2020, Dr. Komin

1    provided Plaintiff with a "no jury duty slip . . . due to [Plaintiff's] immunocompromised state."  AR

2    657.

3         Based on these opinions, Plaintiff argues that the ALJ should have adopted Dr. Komin's

4    assessed limitation that Plaintiff's use of laxatives would cause an extensive amount of stool

5    throughout the day.  (Doc. 22 at p. 16.)  As the Commissioner points out, however, Dr. Komin's

6    statement does not identify any specific functional limitations that the ALJ could evaluate or adopt in

7    the RFC.  *See* 20 C.F.R. §§ 404.1513(a)(2) ("A medical opinion is a statement from a medical source

8    about what you can still do despite your impairment(s)"), 416.913(a)(2) (same).  Accordingly, it was

9    not a medical opinion that the ALJ was required to address.  *See* 20 C.F.R. §§ 404.1520c(b),

10   416.920c(b).

11        Further, the Court finds that the ALJ properly evaluated the supportability and consistency of

12   Dr. Komin's opinions.  As to supportability, the ALJ noted that Dr. Komin's May 2018 statement was

13   contradicted by his contemporaneous note that Plaintiff reported being fine.  *See* AR 29; *compare* AR

14   434 (May 7, 2018 letter) *with* AR 450 (May 7, 2018 treatment note documenting that Plaintiff reported

15   "doing fine" and stating that medication allowed him to "keep busy" with no symptoms of distress or

16   discomfort). Additionally, the ALJ considered subsequent treatment notes from Dr. Komin's office in

17   which Plaintiff did not report symptoms of diarrhea.[4]  AR 30, citing AR 442, 444, 479, 709, 720, 747.

18   The lack of support from the treatment notes is a proper consideration in evaluating the supportability

19   of Dr. Komin's opinion. *See*, *e.g.*, *Villalon v. Kijakazi*, No. 1:20-CV-01830-SKO, 2022 WL 4388264,

20   at *7 (E.D. Cal. Sept. 22, 2022); *Trezona v. Comm'r of Soc. Sec.*, No. 1:21-CV-00792-EPG, 2022 WL

21   1693493, at *3 (E.D. Cal. May 26, 2022).  Further, Dr. Komin's opinion regarding Plaintiff's inability

22   to work was based, in part, on Plaintiff's subjective complaints.  As discussed below, the ALJ properly

23   rejected those complaints.  "A physician's opinion of disability premised to a large extent upon the

24   claimant's own accounts of his symptoms and limitations may be disregarded where those complaints

25

26

27   ───────────────────────

28   [4] The Court notes that certain of the cited records included treatment notes from "Komin Medical" with
     treatment provider Dr. Monica Murphy.  *See*, *e.g.*, AR 720, 747.

have been properly discounted." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (citation omitted).

As to consistency, it is reasonable to infer from the decision that the ALJ found Dr. Komin's opinions regarding Plaintiff's inability to work inconsistent with the opinions of the state agency physicians, who opined that Plaintiff's physical impairments were non-severe. AR 28-30.  In addition, the ALJ found Dr. Komin's 2020 opinion, which indicated a "no jury duty slip given due to [Plaintiff's] immunocompromised state" to be persuasive and consistent with record evidence demonstrating that Plaintiff was diagnosed with coronavirus and quarantined for the prescribed period. AR 30, 657.  The ALJ determined that the opinion was not intended to assess Plaintiff's long-term functioning and there was no other evidence in the record to support a compromised immune system. AR 30.  The ALJ's reasoning invokes the consistency factor, which means the extent to which a medical opinion is "consistent ... with the evidence from other medical sources and nonmedical sources in the claim."  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

FNP Walker

Relevant here, in August 2020, FNP Walker completed a Physical Medical Source Statement form. AR 760-63.  She identified Plaintiff's symptoms to include "frequent diarrhea up to 1-2x per hour."  AR 760.  She opined that Plaintiff could walk ½ block without rest or severe pain.  He could rarely lift less than 10 pounds and never lift 10, 20, or 50 pounds.  She estimated that Plaintiff would be off task for 25% or more of a typical workday due to his symptoms and that he was incapable of even "low stress work."  AR 761.  She explained due to "anxiety, depression and frequent diarrhea, even low stress work will be overwhelming emotionally, physically."  AR 761.  FNP Walker further estimated that Plaintiff would be absent from work for more than four days per month.  AR 761.  He could sit for 30 minutes at one time and stand for 20 minutes at one time.  He could stand/walk less than 2 hours and sit about 2 hours in an 8-hour working day.  He would need a job that permitted shifting positions at will, along with periods of walking every 30 minutes for 15 minutes each time. Due to chronic fatigue, pain, adverse effects of medication, and frequent diarrhea, he would need to take unscheduled breaks every 1-2 hours for 20-30 minutes each.  He also would need to sit with his legs elevated to chest level for 50% of an 8-hour working day and, due to imbalance, dizziness, and

weakness, would need a cane or other hand-held assistive device due to imbalance, dizziness, and weakness.  AR 762.

FNP Walker also completed a Mental RFC questionnaire.[5]  AR 757-59.  She opined that Plaintiff's impairments precluded remembering locations and work-like procedures and understanding and remembering very short and simple instructions or detailed instructions for 15% or more of an 8-hour workday.  She explained that Plaintiff is lethargic and drowsy, dizzy most of the time.  He also has "diarrhea every 1-2 hrs interrupting work flow frequently."  AR 757.  She estimated Plaintiff would likely to be absent from work 5 days or more per month and would be unable to complete an 8-hour workday on 5 days or more a month.  AR 758.  She further opined that Plaintiff's impairments precluded carrying out very short and simple instructions for 10% of an 8-hour workday and precluded all other sustained concentration and memory for 15% or more of an 8-hour workday.  She explained, "The diarrhea is a necessary side effect of Lactulose to keep ammonia levels low enough for him to stay awake, not fall, have clear cognition.  Diarrhea is 1-2 hr daily, if not that often patient becomes confused, disoriented, dizzy, drowsy and has frequent falls."  AR 759.  As to social interaction, she opined that Plaintiff's impairments precluded interacting appropriately with the general public and maintaining socially appropriate behavior and adherence to basic stands of neatness and cleanliness for 10% of an 8-hour workday.  His impairments also precluded him from accepting instructions and responding appropriately to critics from supervisors and getting along with coworkers or peers without distracting them or exhibiting behavioral extremes for 15% or more of an 8-hour workday.  FNP Walker explained that depending upon the severity of Plaintiff's symptoms, they could preclude successful social interaction up to 50% or more of the day.  FNP Walker further indicated that Plaintiff's impairments precluded responding appropriately to changes in the work setting, being aware of normal hazards and taking appropriate precautions, traveling in unfamiliar places or using public transportation, and setting realistic goals or making plans independently of others for more than 15% of an 8-hour workday.  AR 759.

///

_____

[5] This opinion is dated "8/14/04," which appears to be an error.

In evaluating FNP Walker's opinions, the ALJ reasoned as follows:

> The opinions of Donya Walker, FNP-C, are unpersuasive and inconsistent with the record. As an initial point, there were no treatment records from Donya Walker, FNP-C, in the record. The claimant testified that she has seen him only twice. As such, her statements are not persuasive based on the lack of records and considering no evidence that she has examined, treated, or was otherwise familiar with his medical history. She relied upon symptoms rarely seen in his records, including Dr. Komin's records, to support her statement. Her findings are contradicted by the claimant's own testimony. For example, the claimant reported not using a cane or other assistive device, which Donya Walker, FNP-C, indicated was required for his imbalance. She reported that the claimant could only sit for two hours in an 8-hour workday; that claimant reported no problems sitting. Donya Walker, FNP-C reported that the claimant should rarely lift less than 10 pounds and had manipulative limitations; the claimant testified that he could lift 50 pounds.  Inconsistent with all of these limitations are findings of normal gait, stance, sensation, and strength [ ]. There was no evidence to support he would be off task or incapable of even low stress jobs. With medication, his ammonia levels decreased and he had improvement in dizziness, weakness, diarrhea, lethargy, tiredness and mental function (Ex. B2F/35-36, B2F/42-43, and B2F/57).

> In terms of his mental limitations, there was no evidence of treatment for anxiety or depression.  He initially has some intermittent difficulties related to his ammonia levels and hepatic encephalopathy with slow responses, but maintained intact memory and orientation (Ex. B2F/1, B2F/3, B2F/17, B2F/41, B2F/52, B5F/25, and B9F/38). As such, the claimant was limited to understand, remember, and carry out, and maintain attention and concentration for more than simple tasks and instructions, sustain ordinary routines, and make no more than simple work-related decisions. It seems rather impossible that someone with such extensive limitations could do anything, particularly while living on his own. The social limitations are inconsistent with the record, the claimant was noted to be cooperative and pleasant with normal speech and appropriate mood and affect (Ex. B1F/1, B2F/42, B2F/50, B8F/43, B9F/71, and B9F/74). The claimant testified that he goes grocery shopping and does household chores. The record indicated that he was able to take his grandson to baseball practice and watch the games, and attend gym classes 4 to 5 times a week (Ex. B2F/9 and B5F/16).

AR 30-31.

Plaintiff contends that the ALJ committed harmful error by failing to consider FNP Walker's assessed limitation for Plaintiff being off task and needing unscheduled breaks due frequent diarrhea, along with her opinion that Plaintiff's frequent diarrhea precluded the performance of certain mental activities for at least 15 percent of the day. (Doc. 22 at pp. 16-17;  Doc. 25 at p. 7.)  The Court disagrees and finds that the ALJ properly evaluated the supportability and consistency of FNP Walker's opinions, particularly as they relate to Plaintiff's diarrhea and excessive bathroom use.

13

As to supportability, the ALJ noted the absence any treatment records from FNP Walker and that Plaintiff testified she only saw him twice.  AR 30, 65 ("I've seen her twice.").  The ALJ concluded that FNP Walker's statements were not persuasive based on the lack of records and considering no evidence that she had examined, treated, or was otherwise familiar with Plaintiff's medical history. The lack of support from any treatment notes is a proper consideration in evaluating the supportability of FNP Walker's opinion. *Cf. Villalon*, 2022 WL 4388264, at *7; *Trezona*, 2022 WL 1693493, at *3.  Additionally, FNP Walker's lack of a relationship with Plaintiff, including an absence of an examination or treatment history, is a proper factor for evaluating the persuasiveness of her opinion. 20 C.F.R. §§ 404.1520c(c)(3), 416.920c(c)(3) (relationship with claimant factor combines consideration of multiple issue, including length of treatment relationship, frequency of examination, extent of treatment, and examining relationship).

As to consistency, the ALJ determined that FNP Walker relied upon symptoms rarely seen in Plaintiff's records, including Dr. Komin's records, to support her statements.  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).  The ALJ also found FNP Walker's findings were generally contradicted by Plaintiff's own statements.  AR 31.  For example, the ALJ contrasted Plaintiff's report of not using a cane or other assistive device (AR 58), with FNP Walker's statement that a cane or assistive device was required for his imbalance (AR 762).  AR 31.  The ALJ also contrasted FNP Walker's opinion that Plaintiff claimant could only sit for two hours in an 8-hour workday (AR 762), with Plaintiff's report of no problems sitting (AR 63).  The ALJ additionally contrasted FNP Walker's report that Plaintiff should rarely lift less than 10 pounds (AR 761), with Plaintiff's testimony that he could lift 50 pounds (AR 63.)

Additionally, the ALJ considered evidence that with medication, Plaintiff's ammonia levels decreased, and he had improvement in diarrhea and mental function.  AR 31, citing AR 375-76, 382-83, and 397.  Plaintiff argues that the ALJ failed "to link the control of [his] ammonia levels with compliance with his medication, Lactulose, which per the Mayo clinic 'helps increase the number of bowel movements per day and the number of days on which bowel moments occur' and which specifically causes the side effect of 'severe diarrhea' according to both treating sources (AR 434, 739) and the Mayo Clinic."  (Doc. 22 at p. 18.)  Yet, the ALJ determined that even treatment records

14

from Dr. Komin's office reflected that Plaintiff's complaints of diarrhea decreased.  Plaintiff attempts to challenge this determination, asserting that the reports of diarrhea were documented throughout the treatment notes.  (*Id.*)  To support this assertion, Plaintiff relies on only two treatment records:  (1) an August 13, 2015 record documenting "patient is being compliant with all medications, taking lactulose 3 times a day. Having 7-8 bowel movements daily" (AR 838); and (2)  a January 25, 2016 record documenting "complains of diarrhea due to lactulose." (AR 515).  (*Id.*)  However, the ALJ expressly considered these records, acknowledging Plaintiff's 2015 report of diarrhea due to his medication with 7 to 8 bowel movements, but contrasted that report with Plaintiff's later report of 2 to 5 bowel movements per day. AR 27, 383, 444, 514-15.  Further, with regard to his complaints of diarrhea in January 2016, the ALJ noted that Plaintiff was instructed at the same appointment to "titrate his lactulose to two bowel movements a day."  AR 25, 515.

Based on the foregoing, the Court does not find that the ALJ committed reversible error and properly evaluated the persuasiveness of the medical opinions from Dr. Komin and FNP Walker.

### C.  Symptom Testimony

Plaintiff argues that the ALJ failed to provide clear and convincing reasons to reject Plaintiff's symptomology evidence regarding his need to use the restroom every hour.  (Doc. 22 at p. 19.)

In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson*, 359 F.3d at 1196; SSR 16-3p.  First, the claimant must produce objective medical evidence of her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.  *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but discounted his statements concerning the intensity, persistence and limiting effects of those symptoms.  AR 27.  The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.

As to Plaintiff's subjective complaints regarding his bathroom use, the Court finds that the ALJ provided specific, clear and convincing reasons to discount those complaints.  First, the ALJ found Plaintiff's allegations unsupported by the objective record.  AR 27.  Although lack of supporting medical evidence cannot form the sole basis for discounting testimony, it is a factor that the ALJ can consider. *See Burch*, 400 F.3d at 681.  Here, for example, the ALJ cited record evidence that Plaintiff reported ongoing improvement, with no diarrhea.  AR 28, 343, 349, 353, 357-58, 364, 479, 442, 444, 709, 720, 747.  Further, the ALJ considered there was no evidence of significant weight loss in the record to support significant diarrhea.  AR 28.  Plaintiff was noted to be well developed and well nourished, (AR 319, 706, 721), and remained obese throughout the period at issue (AR 375, 514, 709).  AR 28.  The ALJ reasonably determined that this evidence was not consistent with Plaintiff's asserted need for multiple bathroom breaks due to diarrhea.

Second, the ALJ considered that Plaintiff's high activities of daily living did not support his allegations that he needed multiple restroom breaks.  AR 28.  An ALJ may properly discount a claimant's subjective complaints when the daily activities demonstrate an inconsistency between what the claimant can do and the degree that disability is alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012) (an ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms"), superseded by regulation on other grounds.   Even where a plaintiff's activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *Id.* at 1113.  Here, the ALJ cited evidence that Plaintiff was able to complete household chores, go to the gym 4 to 5 days a week, and attend his grandson's baseball practices and games.  AR 28, 64, 349 (attending gym classes 4-5 times a week), 364 (exercising daily, spend 1 hour on a treadmill and one hour lifting weights), 450 (taking grandson to baseball practice and watching the games).  The ALJ reasonably determined that these extensive activities undermined Plaintiff's subjective complaints related to his bathroom use.

Based on the above, the Court finds that the ALJ did not err in the evaluation of Plaintiff's subjective complaints.

///

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, IT IS HEREBY RECOMMENDED as follows:

1.     Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be denied; and

2.     The Clerk of this Court be directed to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff Miguel Sanchez.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __July 24, 2023__                    ____/s/ *Barbara A. McAuliffe*____
                                                        UNITED STATES MAGISTRATE JUDGE

17